UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.                                                        Case No. 14-CV-619

ORION ENERGY SYSTEMS, INC.,

    Defendant.

**DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Plaintiff Equal Employment Opportunity Commission (EEOC) filed this action against Defendant Orion Energy Systems, Inc. (Orion) alleging Orion discriminated against its employee, Scott Conant, on the basis of a disability. Specifically, EEOC claims Orion failed to provide a reasonable accommodation for Conant, who has predominantly used a wheelchair for mobility since October 2009. The complaint also alleges that Orion illegally discharged Conant in January 2010 because of his disability and in retaliation for requesting an accommodation all in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Orion has moved for partial summary judgment. (ECF No. 17.) Orion seeks dismissal of the failure-to-accommodate claim, but not the claims arising out of the alleged discharge because of disability or retaliation. For the reasons below, the motion will be denied.

## BACKGROUND

Scott Conant started working in information technology (IT) at Orion, a commercial lighting manufacturer, on June 8, 2009. On Friday, September 25, 2009, Conant suffered an injury while exercising on a range of motion machine in the company fitness room. Conant experienced a sudden weakness in his legs and later spasms in his right hand. Because the rest of the Orion work force had left the building for the weekend, Conant did not report the incident right after it happened. He went home, where his symptoms persisted. He did report the incident to Lisa Storm in Orion's Human Resources Department on Monday, September 28, 2009. Storm suggested Conant talk to Orion's fitness coordinator, who in turn took Conant to see Physician's Assistant Heather James, who worked on Orion's premises. James performed tests and called a spinal surgeon at Holy Family Hospital and arranged a medical consultation and same-day MRI of Conant's lumbar spine. Conant met with Dr. Ronald Manning on September 30, 2009, but the doctor could not explain Conant's symptoms based on the MRI.

On October 2, 2009, Conant had a neurological consultation with Dr. Krishna Bhatt, who explained based on additional MRIs taken the day before that Conant had a lesion in the spinal cord, possibly caused by multiple sclerosis (MS). She explained that he may have additional lesions on the thoracic spine. Dr. Bhatt told Conant the lesions were causing his mobility problems. In a meeting at Orion later in the first week of October, Physician's Assistant James explained to Conant and his wife that regardless of the final diagnosis, the lesions causing the partial paralysis would remain and Conant should not expect any major improvement of mobility. For the next several months, medical professionals did not reach an official diagnosis as to the cause of Conant's condition. Conant could not walk more than 10–15 feet, however, and he was prescribed a wheelchair that he uses to this

2

day.

Conant began using the wheelchair at work shortly, if not immediately, after the incident. After he started using the wheelchair, Conant's manager, Tom Mrotek, relocated Conant's workspace from the IT bullpen in the production center to the Tech Center in the main office building at Orion. The Tech Center had two elevators whereas the IT bullpen required workers to walk up stairs. The Tech Center was accessible via an employee entrance adjacent to a surface parking lot with three disabled parking stalls.

On October 15, 2009, Conant wrote a memo to Mrotek requesting additional accommodations. Conant proposed that he work part-time from home. In a meeting with Mrotek the next day, Conant also described his difficulties getting in the building and bathrooms and requested that power assisted doors be installed. Conant did not provide any specific medical diagnosis or prognosis because he had not yet been given any himself. In another meeting on October 28, Mrotek approved a flexible working schedule that would allow Conant to have time in the afternoon to attend medical appointments and also approved a special phone for Conant's home that would facilitate his working from home on occasion. Conant asked whether anything could be done about the doors, such as lowering the door pull tension, delaying the closure of the door, or installing door openers or assists. Mrotek relayed the request to Human Resources Director Kari Tylke, who wrote the following email to Mrotek and Conant on October 29:

> Hi Tom and Scott,
>
> Thank you for the outline and I agree with the arrangements. . . .
>
> I will discuss accessibility issues with [Mike Potts, Orion's Executive Vice President] and let you know how we can accommodate the entrance and exit difficulties as soon as possible. In the meantime, it is possible for one of your coworkers to assist you in coming and going from the building? I will work on this immediately.

3

>Thank you,
>
>-Kari

(ECF No. 22-2 at 1.) Conant responded to the email right away that he could probably find someone to open the door for him. (*Id.*)

After a meeting between Tylke and Potts, Orion decided not to install any automatic door openers. EEOC submits that Tylke made that decision around the first week of November 2009, but that she never informed Conant that his accommodation request had been denied. Orion disputes this and says Tylke decided to take a "wait-and-see approach" on the automatic door request to see if Conant's medical condition improved. (Def.'s Resp. to Pl.'s Prop. Findings of Fact ¶ 56, ECF No. 31.) In other words, Orion submits that Tylke did not really deny the request, but only decided not to take immediate action based on the limited information Orion had about Conant's condition. Orion's understanding was that Conant was being driven to work and that whoever was driving him to work could open the employee door for him, as was discussed in the Tylke-Conant email exchange. (Def.'s Prop. Findings of Fact ¶ 45, ECF No. 18.) In fact, Conant began driving himself to work at some point after making his requests for accommodations, but Orion did not know that. According to EEOC, Conant believed based on her email that Tylke was working on the door openers so he simply parked his car as close to the entrance as he could and waited at the door for someone to let him in or he tried to open the door himself. He says he injured his thumb while trying to get in on one such occasion. He also states that he had to wheel himself across a snow-packed parking lot to the door because he could not use the disabled parking spaces in the employee parking lot. This was because he did not have a handicapped parking permit for his vehicle and because Orion never consented for him to park there. Conant also never asked for Orion's consent to use

4

the handicapped parking spaces, however, and as noted above, Orion did not even know Conant was driving himself to work.

Orion states that Tylke suggested to Conant that he use his company-provided cell phone to call the receptionist at the on-site medical clinic to open the door, and Orion also asserts that if Conant's driver or a receptionist was not available to open the door, Conant could have called another Orion employee, including Tylke. Conant never called for assistance, however. When asked why he never called anyone at Orion to open the door, Conant testified in his deposition that he figured everyone was busy. (*Id.* ¶ 50.)

In late December 2009 or early January 2010, after Conant complained to his new supervisor, Kyle Frost, that he was isolated from his team, EEOC states that Frost told Conant to start attending meetings back in the IT bullpen. Conant claims he agreed to do so if the accessibility issues could be worked out (because the IT bullpen required climbing stairs), but he was fired the next day on January 14, 2010. He was told that his position was being outsourced. (Pl.'s Prop. Findings of Fact ¶ 72.)

**ANALYSIS**

Summary judgment must be entered when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A failure-to-accommodate claim under the ADA requires a prima facie showing that (1) the individual is a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013). For purposes of the present motion, Orion does not dispute Conant's evidence that he was a qualified individual with a disability. Orion asserts that it is entitled to

summary judgment on the failure-to-accommodate claim because EEOC cannot establish the second and third elements.

Orion concedes, as it must, that it knew Conant was in a wheel chair, but argues that it did not know whether his condition was permanent or only temporary due to an injury he suffered while exercising. As the EEOC points out, however, the ADA does not require that a limitation be permanent or long-term before it is considered a disability that must be accommodated. Under the 2008 ADA Amendments Act (ADAAA), a person with an impairment that substantially limits a major life activity, or a record of one, is disabled, even if the impairment is "transitory and minor" (defined as lasting six months or less). 42 U.S.C. § 12102(3)(B) (Only paragraph (1)(C) of the definition of disability "shall not apply to impairments that are transitory and minor."); 29 C.F.R. § 1630.2(j)(1)(ix). Likewise, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). *Gogos v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013). Thus, the fact that Orion did not know that Conant's limitation was permanent does not mean it was unaware of his disability.

It is likewise immaterial that Orion did not know the precise nature of Conant's disability. Precise knowledge of the cause of the disability is not required to establish a failure to accommodate claim. Here, Orion was aware that Conant needed a wheel chair for more than a month. *See Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995) ("It is true that an employer will automatically know of many disabilities. For example, an employer would know that a person in a wheelchair, or with some other obvious physical limitation, had a disability."). The company knew he did not fracture a bone or injured a knee or ankle. Most sports or exercise injuries of a temporary nature would require use of crutches, not a wheel chair for more than a month. Here,

6

Conant suffered significant muscle weakness and an MRI taken early on showed lesions on his spinal cord. A reasonable jury could infer from these facts that Orion knew that Conant was disabled notwithstanding the absence of a definitive diagnosis.

The same is true of the third element—whether Orion failed to reasonably accommodate Conant. Orion argues that it was waiting for a definitive diagnosis so that it could decide if it was economically reasonable to incur the expense of installing door assists so that Conant could enter and leave the building where he worked without needing assistance of others. Orion's argument seems to be that at the time it fired Conant, it was still not clear whether his condition was permanent. As noted above, permanent impairment is not required. Whether Orion's delay was reasonable would likewise appear to be a jury question, dependent upon the totality of the facts and circumstances. But even if Orion's delay was reasonable, it does not follow that it is entitled to summary judgment. If the jury finds, as the EEOC has alleged, that Orion terminated Conant's employment rather than retain him as an employee and provide the door assists, it would constitute both a failure to accommodate and wrongful discrimination and retaliation. In other words, it would appear that all three of the EEOC's claims rise or fall together.

For all of these reasons, Orion's motion for partial summary judgment is denied. EEOC's motion to seal (ECF No. 23) is granted because the materials subject to the seal request contain personal, confidential information regarding Conant's medical condition.

SO ORDERED this  2nd  day of July, 2015.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
